**IN THE COURT OF APPEALS OF IOWA**

No. 15-1346
Filed October 14, 2015

**IN THE INTEREST OF B.G. II and D.C.,**
    **Minor Children,**

**B.G., Father,**
    Appellant,

**A.G., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagen, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Roberta Megel, Public Defender, Council Bluffs, for appellant-father.

Michael Hooper, Council Bluffs, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, Matthew Wilber, County Attorney, and Eric Strovers, Assistant County Attorney, for appellee.

Phil Caniglia, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A mother appeals the termination of her parental relationship with two children, six-year-old B.G. and eight-year-old D.C. B.G.'s father also appeals the termination of his parental rights.[1] Both parents argue the State failed to prove the grounds for termination by clear and convincing evidence and contend termination is not in the children's best interests. The mother also asserts termination is inappropriate due to the closeness of the parent-child relationship. Because these children have been in foster care for nearly two years and their parents have made little progress in obtaining stability in their own lives, we affirm the juvenile court's decision on both appeals.

This family came to the attention of the Iowa Department of Human Service (DHS) in 2011 when the father was found caring for the children while under the influence of drugs; the mother was incarcerated in Florida at the time. The children were removed from the home, which was "unsanitary and infested with cockroaches." In February 2012 both the mother and father tested positive for methamphetamine during visitation with the children. The family completed services related to these incidents in October 2012.

This family again came to the attention of DHS in October 2013. Council Bluffs police took the children into protective custody after an incident at their home. While investigating a report of domestic violence by the father, police found drug paraphernalia and unsanitary conditions in the residence. The

---

[1] The father is not D.C.'s biological or legal father. But he testified he was willing to take custody of D.C. The juvenile court terminated the parental rights of D.C.'s possible biological and legal fathers, but they are not parties to this appeal.

parents denied any physical assaults, but reported the father had come home from a night of drinking and threw items around the house. At the temporary removal hearing in November 2013, the juvenile court ordered the parents to undergo random drug screens, participate in services, and find suitable housing. The parents were allowed visitation.

On December 4, 2013, the court adjudicated B.G. and D.C. as children in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2), (g), and (n) (2013). The court allowed the children to be in the mother's care as long as she did not leave the Family Works program before successful completion. The mother left the program a day later and the court ordered the children again be removed from her care.

During these proceedings the parents have been offered services for chemical dependency, domestic violence, and mental health treatment, as well as supervised visitation. The mother and father have both been incarcerated at various points during the CINA proceedings. At the time of the termination hearing, the mother was incarcerated awaiting trial and the father was living in a homeless shelter. Both parents have failed to engage in the services ordered by the court. The father has not shown up for a majority of his drug tests and has not engaged in substance abuse treatment. The court terminated the parental rights of both the father and the mother on July 31, 2015. Both parents separately appeal.

We review de novo proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We uphold an order terminating parental

rights if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

The juvenile court terminated the parental rights of the mother and father under Iowa Code sections 232.116(1)(b), (e), (f), (i) and (*l*). When the juvenile court terminates rights on more than one statutory ground, we may affirm the order on any ground relied upon by the juvenile court and supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We find the State proved paragraph (f) by clear and convincing evidence as to both parents.

To terminate parental rights under section 232.116(1)(f), the State must show by clear and convincing evidence the children are four years of age or older; have been adjudicated in need of assistance; have been removed from the physical custody of the parents for at least twelve of the last eighteen months, or the last twelve consecutive months; and there is clear and convincing evidence at the present time the children could not be returned to the parents' custody as provided in section 232.102.

Neither parent challenges the first three elements, but both parents argue the State failed to prove the children could not be returned to their care. The father argues B.G. could be returned to his care "once he got on his feet after his most recent incarceration." Section 232.116(1)(f) uses the phrase, "at the present time", meaning the point of the termination hearing. *See A.M.*, 843 N.W.2d at 111. The father admits he was unable to take custody of the child at

the time of the hearing because he was still staying at a homeless shelter and his future living situation was uncertain. He had been homeless since November 2014. Given his long-term instability, we conclude the State proved the elements of section (f) by clear and convincing evidence as to the father.

Because she was incarcerated at the time of the hearing, the mother contends the children could have been returned to the care of the father. She advances a legal argument that section (f) only requires one parent to be ready to resume care. Her argument fails for two reasons. First as we decided above, the father is unable to take custody of the children. Second, the mother cannot benefit on appeal from urging the rights of the father. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating one parent cannot assert facts or legal positions pertaining to the other parent as the court makes a separate adjudication as to each parent); *see also In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (stating the father did not have standing to assert an argument on the mother's behalf "in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of his parental rights"). At the time of the termination hearing, the children could not be returned to the mother's care because she was in jail after having been arrested for several criminal charges in Iowa.[2]

Having decided the State proved a statutory ground for termination, we turn to the parents' arguments that termination is not in the children's best interest under Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). In considering whether to terminate parental rights, Iowa courts

---

[2] The mother also admitted in her testimony that she faced an additional criminal charge in Nebraska.

must give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

After reviewing the family's history, we find it is in the children's best interest for termination to proceed. The children's safety cannot be assured if returned to the care of either parent. The children's long-term nurturing and growth cannot be furthered without some stability in their lives. The children had been removed from their parents' care for twenty-one months at the time of the termination hearing. After nearly two years and the provision of numerous services, the parents were unable to progress to the point where they could accommodate the return of the children.

As the juvenile court observed, the "same problems that precipitated the child's removal from their parent's care—untreated chemical dependency, untreated mental health problems, lack of appropriate housing and employment, minimal compliance, domestic violence, incarceration, and lack of verification or commitment" still existed at the time of the termination hearing. Both parents had been in and out of jail during the proceedings. Because of their incarcerations, both parents missed many opportunities to visit their children.

Neither parent followed up with substance abuse treatment or mental health services. The father has not appeared for a majority of his drug tests. He only enrolled in a batterer's education program a few weeks before the termination hearing. We have said it repeatedly in child welfare cases—children should not be required to wait for their parents to become responsible adults.

*K.R.*, 737 N.W.2d at 324. The children's best interests would be served by the DHS finding them a pre-adoptive home following termination of parental rights.

Finally, the mother argues the juvenile court should have determined termination was inappropriate due to the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(c). The factors found in section 232.116(3) are permissive, not mandatory, and the court may exercise discretion in determining whether to apply them. *A.M.*, 843 N.W.2d at 113. The court found "[t]he children are bonded to their parents but there is no bond between these children and the parents that would warrant the court allowing for more time to reunify." We agree with the juvenile court's reasoning. While termination of their relationship with the mother will undoubtedly be hard on the children in the short-term, the benefit of long-term stability carries more weight in this case.

**AFFIRMED ON BOTH APPEALS.**